HORATIO B. HACKETT *v.* PATRICK REYNOLDS & others.

The deposit of a deed conveying the legal title to an estate as security for the amount of a mortgage upon it, relinquished by the mortgagee to the depositor to enable him to obtain the title from the holder of the equity of redemption, constitutes an equitable mortgage upon the estate as between the original parties to the deposit and those subject to their equities, which a court of equity will establish and enforce by sale of the depositor's interest in it, and the interest of those holding the legal title for him, or subject to his equity, especially when necessary to prevent a gross fraud and breach of trust from being practised by the purchaser upon the mortgagee.

THIS case is sufficiently stated in the opinion of the court to explain the point of law ruled in it, and which was not in contest between the counsel; the case turning in the argument solely upon the evidence.

*Browne* for the complainant.

*Thurston* for the respondents.

AMES, C. J. The facts of this case, as established by the proofs, are shortly these: the plaintiff, holding a mortgage of a

thousand dollars and upwards, on a lot with a house and barn on it, in North Providence, agreed with the defendant, Patrick Reynolds, that if 'he would pursue the plaintiff's claim under the mortgage, at his own charge and expense, he should, upon the payment of $500 to plaintiff, if the mortgage was redeemed, have for his services the value of the house and barn, with land sufficient for their convenient use, to be appraised, if the parties could not agree to their value; and if not redeemed, but foreclosed, should have, upon the payment of $500 to the plaintiff, the house, barn, and sufficient land, the plaintiff retaining the remaining portion of the mortgaged premises. Under this agreement, the plaintiff executed an assignment of his mortgage to Patrick Reynolds, and with the assent of Reynolds, deposited it with Abraham Payne, Esq., under a written agreement with Reynolds that the assignment was not to be delivered over until Reynolds had performed his part of the agreement to the plaintiff. Reynolds prosecuted the plaintiff's claim under the mortgage, by instituting, in the plaintiff's name, a suit in this court against one Whelden, the then owner of the fee, to recover possession of the mortgaged premises; and at the March term, 1855, recovered against Whelden a conditional judgment for the possession of the premises, unless Whelden should, within sixty days, pay to the plaintiff the sum of $1,236.33, being the amount due upon the mortgage at that time. Pending the sixty days, Reynolds purchased from Whelden his equity of redemption, through onè McElroy, in whose name the deed from Whelden was taken; agreeing to discharge the plaintiff's mortgage, and to secure to Whelden a part of the purchase-money on the estate discharged of that mortgage. In order to comply with this requirement of Whelden, he applied to Payne, the depositary of the assignment of the plaintiff's mortgage, to deliver it to him in order that it might be recorded and the mortgage discharged; to which Payne assented on condition that McElroy's deed to Reynolds should be deposited with Payne as a security on the part of Reynolds that his stipulations with the plaintiff should be performed. This arrangement was accordingly made; Payne delivering to Reynolds the assignment, and receiving from McElroy the deed to the defendant, Thomas Reynolds, in

whose name Patrick directed it to be made, as security for the plaintiff; Reynolds thereby being enabled to discharge, and actu- ally discharging, the plaintiff's mortgage, in fulfilment of his contract of purchase with Whelden. Subsequently, Patrick Reynolds paid to Payne the stipulated $500 for the plaintiff; but some dispute arising between the plaintiff and himself as to whether he was under his contract to pay the plaintiff any thing more, the plaintiff ascertained, by a judgment of this court, the amount due to him from Reynolds under the contract to be $298.48. To avoid paying the amount thus ascertained, Patrick Reynolds procured McElroy to execute another deed of the land to the defendant, Thomas Reynolds, in lieu and in fraud of that deposited with Payne as security for the plaintiff, and subsequently assigned all his property to the defendant, Hennessey, for the benefit of his creditors, in order to enable him to take the poor debtor's oath, and thus escape the plaintiff's demand.

This bill, which has been heard upon the answers, exhibits and proofs, is brought to procure the cancellation, as fraudulent and void, of the last deed executed by McElroy to the defend- ant, Thomas Reynolds, and to have the plaintiff's lien upon the lot of land in question, arising from the deposit of the first deed from McElroy to Thomas Reynolds, as security, established and enforced by a sale of the land, and an application of the proceeds of the sale to the satisfaction of the lien.

The fraudulent design and practices of Patrick Reynolds upon the plaintiff in this transaction, of which the other de- fendants allowed themselves to be used as passive tools, is so transparent, that a court of equity would be disposed to find or to make a way to thwart them. The only defence attempted at the argument was, to set up the technical force of the an- swer of Patrick Reynolds, which denies the averment of the bill that the first deed from McElroy to Thomas Reynolds was deposited with Mr. Payne as security for the plaintiff, and alleges, that it was merely left with him for inspection, as the counsel both of the plaintiff and of Patrick Reynolds. The answer is, however, in this respect, completely overborne by the testimony of Mr. Payne and of Mr. Colwell, then in Mr. Payne's

office as a student, which establishes beyond question the truth of the averment of the bill.

The only remaining question is, whether the deposit of the deed from McElroy to Thomas Reynolds with Payne, for the security of the plaintiff, gives the latter an equitable lien upon the interest of the Reynoldses in the estate for the amount of his claim. Whatever difficulty there might have been about this question as an original one, under the statute of frauds, it has been too long settled to be agitated anew at this day. 2 Story's Eq. Jurisp. §§ 1020, 1230; 2 Sugden's Vendors, 882, and cases cited. The claim of the plaintiff entered into and made a part of the very purchase-money, by means of the advance of which by the plaintiff, the defendants were enabled to possess themselves of this lot of land. They received the advance only upon the express stipulation, that the title to the lot should stand as security in the hands of a third person for the advance. This is a clear trust, attempted to be defeated by fraudulent practices; and the question arises between the original parties, acting, or suffering their names to be used in the transaction, and seeking to profit by their own fraudulent practices, or the fraudulent practices of their agent in it. The lien must be enforced, the trust executed, the fraud prevented.

Let a decree be entered that the deed delivered by Patrick McElroy to Thomas Reynolds be declared void, so far as the plaintiff's rights in the lot of land mentioned in the bill are concerned, as a fraud upon his lien on, and upon the trust existing in his favor in, said lot of land; that said lien and trust be declared and established; and that the case be referred to one of the masters of this court, with instructions to ascertain the amount of the plaintiff's claim under said lien and trust; and to sell all the right, title, and interest of Patrick Reynolds, of John B. Hennessey, as assignee of Patrick, and of Thomas Reynolds, in said lot of land, at public auction, for the satisfaction of said lien and trust, and of the plaintiff's costs of this suit, including the fees of the master, and all expenses of sale, unless the amount of said claim and costs shall be sooner paid into the registry of the court, or to the plaintiff; and let the case be reserved for further order.